**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANIMAL LEGAL DEFENSE FUND, et al.,  )  Case No. CV 12-4407-SC
                                     )
             Plaintiffs,  )  ORDER DENYING MOTION TO
                                     )  DISMISS AND
    v.                              )  GRANTING MOTION TO TRANSFER
                                     )
UNITED STATES DEPARTMENT OF     )
AGRICULTURE, et al.           )
                                     )
            Defendants.  )
                                     )

**I.    INTRODUCTION**

    Now before the Court is the above-captioned defendants' motion to dismiss or transfer this suit on the grounds that venue is improper in this district. ECF No. 16 ("Mot."). The motion is fully briefed.[1] Pursuant to Civil Local Rule 7-1(b), the Court has determined that the matter is appropriate for resolution without oral argument. For the reasons set forth below, the Court DENIES Defendants' motion to dismiss and GRANTS Defendants' motion to TRANSFER this case to the Southern District of Florida.

///

///

///

_____

[1] ECF No. 18 ("Opp'n"); ECF. No. 24 ("Reply").

**United States District Court**
For the Northern District of California

## II.   BACKGROUND

Plaintiffs are three animal rights organizations, the Animal Legal Defense Fund, Orca Network, and People for the Ethical Treatment of Animals, Inc., and four individuals, Howard Garrett, Shelby Proie, Patricia Sykes, and Karen Munro, (collectively, "Plaintiff(s)").  Of the Plaintiffs, only Animal Legal Defense Fund ("ALDF") is located within the Northern District of California -- the others are located in Washington, Virginia, and Colorado.  ECF No. 1 ("Compl.") ¶¶ 6-7, 12, 17, 21, 26, 29, 31.  On August 22, 2012, Plaintiffs filed the instant action naming as defendants the United States Department of Agriculture ("USDA") and, in their official capacities, USDA Secretary Tom Vilsack and the USDA Animal and Plant Health Inspection Service's Eastern Regional Director Elizabeth Goldentyer (collectively, "Defendant(s)").

This case arises from Plaintiffs' concern for an orca named "Lolita."  Lolita is currently exhibited at the Miami Seaquarium ("Seaquarium"), where Plaintiffs allege she is kept in inhumane conditions contrary to the requirements of the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131 et seq.  Compl. ¶¶ 64-81.  The AWA requires anyone requesting a license to exhibit certain animals, including orcas, to abide by USDA requirements relating to minimum enclosure sizes, weather shelters, and so forth.  Id.  Plaintiffs claim that the Seaquarium's facilities do not meet USDA standards and that, by granting the Seaquarium a license to exhibit Lolita, Defendants violated the AWA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Compl. ¶¶ 88-91.

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Defendants move to dismiss the complaint for improper venue.  Mot.

**United States District Court**
For the Northern District of California

at 3-4.  Alternatively, per 28 U.S.C. § 1404(a), Defendants move to transfer this case to the Eastern District of North Carolina, the District of Columbia, or the Southern District of Florida.  Mot. at 3-4.  The Seaquarium, which joined the case as a Defendant-Intervenor, argues specifically in favor of transfer to the Southern District of Florida.  ECF No. 24 ("Seaquarium Reply").

## III.  <u>DISCUSSION</u>

### A.   <u>Defendants' Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss an action for improper venue.  Fed. R. Civ. Proc. 12(b)(3).  On a Rule 12(b)(3) motion, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings," but the court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1137 (9th Cir. 2004).

Venue is proper in an action against an agency of the United States or an officer or employee of the United States acting in his official capacity in any judicial district in which: (A) the defendant resides; (B) a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated; or (C) the plaintiff resides if no real property is involved in the action.  28 U.S.C. § 1391(e)(1).[2]  If venue is improper, district

---

[2] Both parties refer to this section as 28 U.S.C. § 1391(e)(3). However, the section is now numbered § 1391(e)(1)(A)-(C) instead of § 1391(e)(1)-(3).  This Order follows the current numbering

courts have discretion either to dismiss the action, or in the interest of justice, to transfer it to a district where it could have been brought.  28 U.S.C. § 1406(a).

Plaintiffs allege that venue is proper under 28 U.S.C. § 1391(e)(1)(C), because ALDF has an office within the Northern District of California.  Compl. ¶ 5.  However, the parties dispute whether real property is involved in this case.  See Mot. at 3-4; Opp'n at 3.  If this case does in fact involve real property, then venue is improper under § 1391(e)(1) and this Court must dismiss the suit.

Defendants argue that this case involves real property because the AWA license at issue in the Complaint "directly affects a substantial part of the real property on which the Seaquarium is located."  Mot. at 3.  In support of this point, Defendants cite Center for Biological Diversity v. U.S. Bureau of Land Management ("CBD v. BLM"), a recent case from this Court finding that real property was involved in a case where the basis for venue was § 1391(e) because the action had to do with a federal agency's management of lands under federal law and adoption of a land management plan for a large piece of property in California.  Mot. at 3 (citing C 08-05646 JSW, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009)).  Plaintiffs respond that, in CBD v. BLM, the Court held that the touchstone for applying § 1391(e) is not whether real property is peripherally affected by the case at issue, but instead whether the action centers directly on the real property.  Opp'n at

convention, but will often refer to § 1391(e) generally, for the sake of space and brevity.

**United States District Court**
For the Northern District of California

3.  Defendants apparently abandoned this issue in their reply brief, writing only in support of the motion to transfer.  <u>See</u> Reply at 1.

In any event, Plaintiffs are right.  <u>CBD v. BLM</u> distinguished several cases that "only peripherally" involved real property. 2009 WL 1025606, at *2-3.[3]  The Court held that if the nexus of a case only concerns real property peripherally, as when the cause of action does not directly arise out of real property (but rather, for example, an issue of regulatory interpretation), then the case does not "involve real property" per § 1391(e)(1)(C).  <u>Id.</u>  The distinction between direct and peripheral involvement with real property is, as Plaintiffs rightly argue, the touchstone that this Court uses in resolving disputes under § 1391(e)(1)(C).  <u>See</u> <u>id.</u>

In the instant action, real property is only peripherally involved.  The core issue here concerns an administrative licensing decision that happens to involve real property.  No title, interest, or possession of real property would be affected if this case were resolved on the merits, even though the case involves

---

[3] Specifically, the Court distinguished <u>Santa Fe Int'l Corp. v. Watt</u>, 580 F. Supp. 27, 28 (D. Del. 1984) (holding that a challenge to an administrative order concerning oil and gas leases in Kuwait did not raise "questions of a peculiarly local nature or knowledge of state or federal mineral rights law," despite the far-flung locale of the underlying facts, and that the issue could be resolved with administrative law expertise and minimal outside knowledge); <u>Ashley v. Andrus</u>, 474 F. Supp. 495, 497 (E.D. Wis. 1979)(holding, in a dispute over whether the Department of Interior had properly interpreted statutes and regulations controlling oil and gas lotteries, that real estate was only peripherally involved because the core of the matter concerned statutory interpretation, not the resolution of title to or interest in real property itself); <u>Envtl. Defense Fund, Inc. v. Corps of Eng'rs of the U.S. Army</u>, 325 F. Supp. 728, 731-32 (E.D. Ark. 1971) (finding that an action to enjoin the construction of a dam did not concern real property because the action "[did] not put in issue the title to, or possession of, such lands, or any interest therein.").

facts derived from real property.

The Court finds that since Plaintiff ALDF is based in the Northern District of California and no real property is involved in this matter, venue in the Northern District of California is proper, and Defendants' motion to dismiss for improper venue is DENIED.

**B.**   **<u>Defendants' Motion to Transfer</u>**

Alternatively, Defendants move to transfer this case to the District of Columbia, the Southern District of Florida, or the Eastern District of North Carolina.  Pursuant to 28 U.S.C. § 1404(a), a district court may transfer any civil action for the convenience of the parties, witnesses, or in the interests of justice.  <u>See</u> 28 U.S.C. § 1404(a).  District courts have broad discretion to transfer cases, though each transfer must be determined on an individualized basis.  <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000).  It is the movant's burden to demonstrate that an action should be transferred.  <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 279 (9th Cir. 1979).

The Court's analysis under § 1404(a) has two steps.  First, the Court must decide whether the action "might have been brought" in a transferee court.  <u>Hatch v. Reliance Ins. Co.</u>, 758 F.2d 409, 414 (9th Cir. 1985).  If so, the Court moves to the second step, where it must consider whether transferring the case is best for convenience and fairness to the parties and the interests of justice.  <u>See</u> <u>GNC Franchising</u>, 211 F.3d at 498-99.  In deciding this second step, the Court may consider factors including (1) the plaintiff's choice of forum, (2) convenience of the parties and

**United States District Court**
For the Northern District of California

witnesses, (3) ease of access to evidence, (4) local interest in the controversy, (5) familiarity of each forum with the applicable law, and (6) relative congestion in each forum.  See <u>Ctr. For Food Safety v. Vilsack</u>, No. C 11-00831 JSW, 2011 WL 996343, at *6 (N.D. Cal. Mar. 17, 2011).  The Court will discuss the factors below.

**1.   <u>Where the Action Might Have Been Brought</u>**

The Court must first determine whether the venues proposed by Defendants are venues in which the present action might have been brought.  <u>Hatch</u>, 758 F.2d at 414.

In their motion to transfer, Defendants do not specify any one district as the transferee forum.  They propose three possibilities: the District of Columbia, where the USDA's main office is located; the Eastern District of North Carolina, where the USDA's regional office is located (and where the decision to grant the license was made); or the Southern District of Florida, where the Seaquarium and Lolita are located.  Mot. at 4.

All of these venues are potentially proper venues under 28 U.S.C. § 1391.  The District of Columbia is proper because Vilsack resides there.  28 U.S.C. § 1391(e)(1)(A).  Likewise, the Eastern District of North Carolina is proper because Elizabeth Goldentyer resides there.  <u>Id.</u>  The Southern District of Florida is appropriate as venue because the Seaquarium and Lolita are located there, and the Seaquarium's alleged treatment of Lolita gave rise to this case's underlying claim.  28 U.S.C. § 1391(e)(1)(B).  Plaintiffs do not dispute this, though they argue that convenience, fairness, and the interests of justice weigh against transfer.  Opp'n at 3-7.

///

2.      **Factors Concerning Convenience, Fairness, and the**
**Interests of Justice**

a.      **Plaintiffs' Choice of Forum**

A plaintiff's choice of forum is generally accorded substantial weight, and the defendant therefore bears a considerable burden in justifying transfer.  Pac. Car & Foundry Co. v. Pence, 403 F.2d 949, 953-54 (9th Cir. 1968); STX, Inc. v. Trik Stik, Inc., 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988).  However, the plaintiff's choice of forum is not dispositive.  Knapp v. Wachovia Corp., No. C 07-4551 SI, 2008 WL 2037611, at *2 (N.D. Cal. May 12, 2008).  Moreover, where the operative facts have not occurred within the forum of original selection and that forum has no special interest in the parties or subject matter, the plaintiff's choice of venue merits less deference.  Pac. Car & Foundry, 403 F.2d at 954.

Defendants argue that because, out of the seven Plaintiffs, only ALDF resides in the Northern District of California, and since its harms are not concentrated in this district but are dispersed throughout its nationwide membership, Plaintiffs' choice of forum does not warrant deference.  Mot. at 5-6.  Plaintiffs respond -- without directly addressing Defendants' arguments -- that the presumption is so powerful that it should not be easily overturned.  Opp'n at 3-4.

Plaintiffs discount the fact that there are times when this presumption's import is lessened, as when the original forum's connection to the matter is minimal and the operative facts arose elsewhere.  See Pac. Car & Foundry, 403 F.2d at 954.  The Court recognizes that ALDF has an office in the Northern District of

**United States District Court**
For the Northern District of California

California, has spent time and money on this matter, and has members within this district who care about the issues in this case (though Plaintiffs never specify how many).  However, most of the other Plaintiffs reside outside this district, and all of the operative facts arose elsewhere.  See <u>id.</u>  Moreover, cases that impact the environment or groups of animals have more compelling reasons for being heard in the forum having the closest local interest or connection to the activities alleged in the complaint, since those communities will be most affected by those cases' resolutions.  See <u>Ctr. for Biological Diversity v. Lubchenco</u>, No. C 09-4087 EDL, 2009 WL 4545169, at *3 (N.D. Cal. Nov. 30, 2009); <u>Ctr. for Biological Diversity v. Kempthorne</u>, No. C 07-0894 EDL, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007).

Here, Plaintiffs' claims ultimately concern the well being of Lolita, who is located far outside this district, and whose exhibition is partly governed by a license granted by government officials in the District of Columbia and Raleigh, North Carolina. This point, plus the fact that the operative facts arose elsewhere, counts against plaintiff's original choice of forum despite the presumption in its favor.

The Court finds that Plaintiffs' choice of forum is entitled to minimal deference.

**b.  <u>Convenience of the Parties and Access to Evidence</u>**

The Court next combines two factors: convenience of the parties and access to evidence.  Under these factors, the Court must determine how transferring the case could affect the parties' ability to litigate the matter fairly and conveniently, which

**United States District Court**
For the Northern District of California

includes evaluating how transfer could affect both sides' ability to bring forth evidence and witnesses.  See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

Defendants argue that convenience of the parties and witnesses favors transfer in this case, because Defendants and one Plaintiff are on the East Coast (with all but one Plaintiff located outside the present jurisdiction anyway) and likely witnesses and evidence are probably located elsewhere as well.  Mot. at 6.  Plaintiffs respond that transferring this case for convenience or fairness is unnecessary, because the relevant administrative record could easily be sent anywhere using modern communications technology.  Opp'n at 5-6.  Plaintiffs also argue that it is unlikely that a decision in this case will turn on witnesses or evidence.  Id. Defendants point out that in the event of a hearing on remedies, witnesses and other evidence might be required because Plaintiffs allege ongoing harm and seek injunctive relief.  Reply at 3-4.

The Court agrees with Defendants that, regardless of the administrative record's ease of production and importance to the case's resolution, the locations of the parties, witnesses, and evidence could be important in the event of a hearing on an injunction.  Reply at 4 (citing Sierra Club v. U.S. Def. Energy Support Ctr., No. C 10-02673 JSW, 2011 WL 89644, *2 (N.D. Cal. Jan. 11, 2011) (citing Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)).  Further, the parties have not agreed to resolve this matter exclusively on the administrative record.  See Lubchenco, 2009 WL 4545169, at *3; Kempthorne, 2007 WL 2023515, at *5.  In the event of a hearing, it is likely that any witnesses or evidence in

1  addition to the administrative record will be located outside the

2  Northern District of California, since the licensing decision-

3  makers are in the District of Columbia and North Carolina and the

4  underlying facts of the licensing decision arose at the Seaquarium

5  in Florida.  Moreover, most Plaintiffs (and their attorneys) are

6  already located outside the Northern District of California and

7  would need to travel in the event of a hearing, somewhat mitigating

8  the convenience of the Northern District of California being the

9  forum for this case.  Any of the venues Defendants suggest in their

10  motion would be more convenient for the parties and witnesses, on

11  balance, than the Northern District of California would, due to the

12  locations of the parties and potential evidence and witnesses.

13      The Court finds that this factor weighs in favor of transfer.

14      **c.   <u>Local Interest in the Controversy</u>**

15      This factor requires the Court to consider the "local interest

16  in having localized controversies decided at home." <u>Decker Coal</u>,

17  805 F.2d at 843 (quoting <u>Piper Aircraft Co. v. Reyno, 454 U.S. 235,

18  241 (1981)</u>).

19      Defendants do not specify which of their proposed venues has

20  the strongest interest in hearing this case, but they do argue that

21  the Northern District of California has little interest because the

22  core facts of this case arose elsewhere, and only part of the

23  alleged harm, the cost to ALDF and harms to its members, occurred

24  in this district.  Mot. at 7.  Plaintiffs argue that ALDF's

25  expenditure of "substantial resources," its institutional interest

26  in the matter, and its members' concerns for Lolita are enough to

27  give the Northern District of California a strong interest in the

28  matter.  Opp'n at 6-7.

**United States District Court**
For the Northern District of California

1    The Court agrees with Defendants.  In this matter, the
2  Northern District of California admittedly has some local interest
3  in seeing this case decided here because of the ALDF's presence
4  within the district.  However, the Court must also consider other
5  venues' "local interest in having localized controversies decided
6  at home."  Piper Aircraft, 454 U.S. at 241.  The localized nature
7  of certain cases concerning specific environmental locales or
8  individual animals -- as opposed to cases based on more all-
9  encompassing phenomena like global warming -- can give certain
10  districts an especially acute interest in having cases decide
11  there, where they would have the most localized impact.  See
12  Lubchenco, 2009 WL 4545169, at *3; Kempthorne, 2007 WL 2023515, at
13  *5.  The primary impact of this case would likely be outside the
14  Northern District of California, since the USDA's decisions in its
15  offices would be affected by the outcome, as would the local
16  community in the Seaquarium's Miami home.  Reply at 6-8.  Both
17  places have a localized interest in seeing this conflict resolved
18  there.  Defendant-Intervenor the Seaquarium argues specifically
19  that the outcome of this case could significantly impact its local
20  community, including Seaquarium employees like Lolita's
21  veterinarians, schools, citizens interested in marine life, and a
22  tourism industry based partly on the Seaquarium.  Seaquarium Reply
23  at 4-5.  The Court finds these reasons especially compelling.  The
24  Court recognizes Plaintiffs' reasons for showing local interest in
25  the Northern District of California, but finds them outweighed by
26  the interests of other forums, namely the Southern District of
27  Florida.

28    The Court finds that this factor weighs in favor of transfer.

**United States District Court**
For the Northern District of California

1    **d.    Familiarity of Each Forum with the Applicable**

2    **Law**

3    This factor is neutral since the Northern District of

4    California, the District of Columbia, the Eastern District of North

5    Carolina, and the Southern District of Florida would all be equally

6    familiar with the applicable law in this matter.

7    **e.    Relative Congestion in Each Forum**

8    The relative congestion of each proposed forum is relevant –

9    though not as weighty as the other factors – to the Court's

10   decision on whether to transfer, because a congested court would

11   probably be slower to adjudicate the matter than a less busy court.

12   See <u>Decker Coal</u>, 805 F.2d at 843.  As of December 2011, the median

13   time from filing to disposition was 7.6 months in the Northern

14   District of California, 7.6 months in the District of Columbia, 5

15   months in the Southern District of Florida, and 8.9 months in the

16   Eastern District of North Carolina.[4]

17   Though this factor is not dispositive, it does favor transfer

18   to the Southern District of Florida.

19   **f.    Balancing the Factors**

20   The balance of these factors favors transfer to the Southern

21   District of Florida.  It would not be unreasonably inconvenient for

22   any party or witness to travel there in the event of a hearing.

23   The administrative record is easy to send anywhere. The local

24   district court would be versed in the relevant law.  The locus of

25   operative facts is there.  The impact of a court's decision on this

26   _____

27   [4] <u>See</u> Federal Court Management Statistics,
     http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics

28   /DistrictCourtsDec2011.aspx (last visited Jan. 6, 2012).

case would be greatest there.  Finally, the Southern District of Florida is less congested than any of the alternative venues.

**V.**   **CONCLUSION**

    For the foregoing reasons, the Court DENIES Defendants United States Department of Agriculture, Tom Vilsack, and Elizabeth Goldentyer's motion to dismiss and GRANTS Defendants' motion to transfer this case to the Southern District of Florida.

    IT IS SO ORDERED.

Dated:  January 8, 2013

_____
UNITED STATES DISTRICT JUDGE

United States **District Court**
For the Northern District of California